# BENJAMIN F. DAVIS v. JOSEPH MOSES AND OTHERS.[1]

July 15, 1927.

No. 25,313.

**Special verdict in action for wrongful death inconsistent with general verdict.**

[1] The special verdict, that a cause of action for wrongful death had been settled and discharged against one of several whose concurrent negligence caused the death, cannot be reconciled under the charge of the court with a general verdict in favor of recovery against the others, and in such case the rule must be applied that the special verdict prevails and controls the judgment.

**Provision of agreement not to sue tenant did not convert it into a release of cause of action.**

[2] The tenant of defendants, through its insurer, obtained from plaintiff an agreement not to sue the tenant on the cause of action which also contained a provision that the agreement might be set up as a bar to suit. Such provision does not convert the instrument into a release or discharge of the cause of action.

**Evidence sustained special verdict of settlement of claim against tenant for wrongful act.**

[3] But the insurer paid the consideration for the agreement by a draft stating it was in full settlement and satisfaction of the cause of action. It is *held* that the evidence sustains the special verdict that there was a settlement and discharge of the claim for damages against the tenant for the wrongful death.

Compromise and Settlement, 12 C. J. p. 320 n. 74; p. 339 n. 17; p. 366 n. 56; p. 367 n. 59.
Evidence, 22 C. J. p. 1293 n. 72.
Release, 34 Cyc. p. 1044 n. 4.
Trial, 38 Cyc. p. 1927 n. 83.

See note in 58 L. R. A. 299; 24 L.R.A.(N.S.) 451; L. R. A. 1918F, 358; 23 R. C. L. 408; 3 R. C. L. Supp. 1328.

[1]Reported in 215 N. W. 225.

Plaintiff appealed from a judgment of the district court for Hennepin county, Dickinson, J. Affirmed.

*Leonard, Street & Deinard,* for appellant.

*Simon Meyers* and *A. R. Chesnut,* for respondents.

HOLT, J.

Plaintiff appeals from a judgment for defendants notwithstanding a general verdict for plaintiff.

[1] The action was for damages caused by the wrongful death of plaintiff's intestate while occupying rooms in a building known as 822 Nicollet avenue, in Minneapolis, owned by defendants and at the time under lease to Camfield-Gregory & Company, a corporation, which operated the same as Lincoln Hotel. A fire occurred in the building, causing the death of plaintiff's intestate, Mrs. Addie Lehman, she being suffocated by smoke while attempting to descend an inside stairway. The negligence alleged against defendants was the failure to provide the rooms occupied by her with fire escapes as required by the city ordinance. The defenses presented, in addition to contributory negligence, were that it was the tenant's duty to maintain the premises in a safe condition, and that prior to the commencement of suit plaintiff had compromised his cause of action with the tenant for the sum of $3,500, which was paid plaintiff in full settlement of the same.

Although the room next to those occupied by Mrs. Lehman was provided with a proper fire escape and the window of Mrs. Lehman's room was but 17 or 18 inches from the iron railing surrounding the fire escape, it was for the jury to say whether Mrs. Lehman was negligent when she chose rather to attempt to walk down stairs than to venture to climb over the railing to this fire escape, located as she was many stories above the street. We also are clear that the fire escape provided cannot as a matter of law be held a compliance with the ordinance so as to take from the jury the question of its adequacy to free the owners of the building from the charge of negligence. The difficult questions presented by the appeal relate to the special verdict upon which the court directed judgment for defendants notwithstanding the general verdict in

favor of plaintiff for $3,500. The jury were directed to find on four specific issues, and found that the rooms occupied by Mrs. Lehman were not provided with a fire escape reasonably accessible for direct egress through the window, that the lack of such a fire escape was the proximate cause of her death, and that she was not guilty of contributory negligence. The fourth issue was this: "Did the acceptance of $2,000 by the administrator constitute a settlement and discharge of any claim for damages against the Camfield-Gregory Co.?" The jury answered: "Yes." The jury were charged to return a general verdict for defendants in case they found in their favor on the proposition of settlement. There was no motion for a new trial by either party. Each moved for judgment, plaintiff also moving to strike the special verdict upon the question above set out.

The general and special verdicts are inconsistent. In such case the special verdict prevails. Awde v. Cole, 99 Minn. 357, 109 N. W. 812. Appellant criticizes the form of the verdict or questions the jury answered. But no objection was made when submitted, and since no new trial was asked no error that does not assail the sufficiency of the evidence sustaining the special verdict upon which the judgment is based may be considered. Appellant also attempts to reconcile the special verdict in question with the general verdict, but under the charge of the court this is not possible. It clearly finds that the acceptance of $2,000 by the plaintiff constitutes a settlement and discharge of any claim for damages against defendants' tenant for the injury. The law is settled that a settlement and discharge of a joint tortfeasor wipes out a cause of action as to all concerned in the tort. Hartigan v. Dickson, 81 Minn. 284, 83 N. W. 1091; Almquist v. Wilcox, 115 Minn. 37, 131 N. W. 796. We think the special finding here is impossible of being reconciled with the general verdict. The jury may have thought that there could have been a settlement and discharge of the cause of action as against the tenant alone without legal effect upon the landlord, contrary to the charge of the court, but that does not avoid the consequence the law attributes to the finding. It determines a vital

and controlling issue, and may not be got rid of in the manner done in Demerce v. M. St. P. & S. S. M. Ry. Co. 122 Minn. 171, 142 N. W. 145. It was vitally material, was submitted, and could not be withdrawn or ignored when answered. Kreatz v. McDonald, 123 Minn. 353, 143 N. W. 975.

[2] Does the evidence sustain the special verdict? Respondents claim that the instrument executed by plaintiff and the tenant, though termed an agreement not to sue, contains a clause which in law makes it a release of the cause of action. It is not necessary to set out the full agreement. It is lengthy and evidently drawn with care to preserve the cause of action and confine its effect strictly to an engagement not to sue the tenant. The provision which is contended to give it the effect of a release is this: "And it is expressly understood and agreed that these presents may be pleaded as a defense in bar or in abatement to any action or other proceeding which may be brought, instituted, or taken by or in behalf" of the plaintiff against the tenant.

Early it was held that an instrument in the nature of a covenant not to sue could not be interposed as a defense if, notwithstanding the same, the injured party brought suit against the one who had obtained the covenant. This evidently on the theory that the covenantee did not have any right under the covenant until there had been a recovery against him upon the cause of action against the enforcement of which the covenant existed. But soon the courts receded from this position for the purpose of avoiding a circuity of actions, and the defense may now be set up by the covenantee when sued by the covenantor upon the cause of action involved in the agreement. Matheson v. O'Kane, 211 Mass. 91, 97 N. E. 638, 39 L.R.A.(N.S.) 475, Ann. Cas. 1913B, 267. This is also alluded to in Musolf v. Duluth Edison Elec. Co. 108 Minn. 369, 122 N. W. 499, 24 L.R.A.(N.S.) 451. The provision relied on in the Massachusetts case as giving the instrument the effect of a release is substantially the same as in the case at bar. It read:

"And that these presents may be pleaded as a defence to any action or other proceeding which may be brought, instituted or

taken by me against the said Townsend, Trustee, or his estate, in breach of this covenant."

It was held not a release. Therefore the provision relied on by respondents adds nothing to what under modern practice the instrument would accomplish without it.

It appeared that the $2,000 paid plaintiff by the tenant was in the form of a draft payable to plaintiff's attorney reading:

"Pay to the order of George B. Leonard, attorney for estate of Mrs. Addie Lehman the sum of Two Thousand and 00/100 Dollars ($2,000.00) in full settlement and satisfaction of Claims arising out of accident which occurred January 8th, 1923, at Lincoln Hotel, Minneapolis, Minn., resulting in death of Mrs. Addie Lehman."

The draft was properly indorsed by the attorney, who testified that he did so without noticing the language quoted. Respondents not being parties to these instruments were at liberty to show what actually was agreed upon and what was done, even though the evidence so adduced by them did vary the terms of the instruments. Johnson v. Von Scholley, 218 Mass. 454, 106 N. E. 17. Taking the instrument executed by plaintiff and the tenant as the agreement pursuant to which the $2,000 was paid and received, there clearly was no release or settlement of the cause of action. This money was paid by means of a draft. Were this draft alone considered, it would just as clearly appear that the cause of action was settled. The claim was unliquidated. Marion v. Heimbach, 62 Minn. 214, 64 N. W. 386; Hillestad v. Lee, 91 Minn. 335, 97 N. W. 1055. The draft and the written agreement between plaintiff and defendants' tenant resulted from the work and negotiations carried on between the plaintiff's attorney and the agent and attorney of the insurer of the tenant. This insurer furnished and paid the money—the draft. The attorney for the insurer testified that if the company was protected so that it could not be again called upon on account of that fire, he cared not in what form the attorney for plaintiff couched the agreement. The insurer had its office in Pennsylvania. There the draft was drawn and forwarded to its agent in Minneapolis, delivered to plaintiff's attorney, who indorsed and cashed it

with the release embodied thereon.[1] There was no issue raised by the pleadings as to mistake or deception in respect to the contract of settlement as contained in the draft.[2]

What was the intention of the parties to the whole transaction? Where, as here, there arises an uncertainty because of a conflict between the writings which compose the agreement of two parties, and a third party, not bound by rule against varying written instruments, shows what was said and done, it makes a question for the jury whether there was a mere agreement not to sue or a release and satisfaction of the cause of action by the acceptance of the draft issued on the condition that it should be a full settlement so far as the tenant was concerned. If it was the latter the cause of action was gone as to the respondents also. Almquist v. Wilcox, 115 Minn. 37, 131 N. W. 796; Musolf v. Duluth Edison Elec. Co. 108 Minn. 369, 122 N. W. 499, 24 L.R.A.(N.S.) 451.

[3] We cannot hold that the special verdict here challenged is without support. And since it went to a controlling issue in the case, it must prevail.

Other questions argued on both sides are not reached, for this is an appeal from judgment non obstante where there was no motion for a new trial.

The judgment is affirmed.

### AFTER REARGUMENT.

On September 30, 1927, the following opinion was filed:

PER CURIAM.

[3] A hearing was granted only as to the question whether the evidence sustains the special verdict that there was a settlement and discharge of the claim for damages against the tenant for the wrongful death of plaintiff's intestate. After hearing the arguments and considering the testimony bearing thereon, the majority of the court adhere to the opinion that the evidence sustains the special verdict mentioned. Justice Holt is of the contrary view.

[1]See correction on page 177. [Reporter.]
[2]See comment on page 177. [Reporter.]

In the original opinion occurred an erroneous statement as to drawing and sending the draft containing the release. The facts in that respect were' these: The agent of the insurer at Minneapolis, who negotiated with plaintiff's attorney, wrote the draft. It was then delivered to plaintiff's attorney by the insurer's attorney at Minneapolis, who previously had received and forwarded to the insurer at its home office in Philadelphia, Pennsylvania, the agreement containing the covenant not to sue which was in its hands when it caused the draft to be paid in Philadelphia. However, the place where the draft was drawn or the course it took is not material in the decision of the case.

In the opinion occurs a reference to the fact that plaintiff's pleadings do not tender any issue that the release inserted in the draft was through mistake or inadvertence.[3] This was no doubt due to the fact that his attorney when he accepted and indorsed the draft failed to notice the release and hence was unconscious of its existence when the reply was drawn. However, his testimony to that effect was received. The testimony of the attorney for the insurer upon that proposition, as well as other evidence in the case, was such that, in the opinion of the majority of the court, the effect of the release in the draft upon the whole transaction with the tenant was for the jury.

With the correction made as to the origin and course of the draft containing the release, the former opinion is adhered to.

[3] See page 176, supra. [Reporter.]